UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

_____
                                       )
ASHLEY ELIZABETH IHDE,                 )
                                       )
                   Plaintiff,          )
                                       )          CIVIL ACTION
              v.                       )          NO. 6:15-00351-WY
                                       )
CAROLYN W. COLVIN,                     )
Acting Commissioner, Social            )
Security Administration,               )
                                       )
                   Defendant.          )
                                       )
_____)


YOUNG, D.J.[1]                                  September 5, 2017

**MEMORANDUM OF DECISION**

## I. INTRODUCTION

Ashley Elizabeth Ihde ("Ihde") brought this action against

the Commissioner of Social Security ("Commissioner"), pursuant

to 42 U.S.C. sections 405(g) and 1383(c)(3).  Ihde requested

review of the Commissioner's denial of Ihde's application for

disability benefits and supplemental security income.  This

Court granted remand on a single issue, as explained herein.

### A.   Procedural History

Ihde sought Title II period of disability and disability

insurance benefits as well as Title XVI supplemental security

_____
[1] Of the District of Massachusetts, sitting by designation.
Reassignment Order, ECF No. 6.

income on February 21, 2014.  Administrative R. ("Admin. R.")

12, ECF No. 14.[2]  The Social Security Administration initially

denied Ihde's applications on July 14, 2014 and then again on

September 17, 2014 after reconsideration.  Id.  On October 13,

2014, Ihde submitted a request for a hearing which then was held

on April 14, 2015.  Id.  On June 1, 2015, the hearing officer[3]

determined that Ihde was not disabled and therefore qualified

for neither disability insurance benefits nor supplemental

security income.  Id. at 20.  The Appeals Council denied Ihde's

request for review on October 2, 2015.  Id. at 1-3.

On December 4, 2015, Ihde filed a complaint in federal

district court asking that the Court find that she is entitled

to benefits or, in the alternative, remand the Social Security

Administration's decision for further hearing.  Compl. 2, ECF

No. 3.  The Commissioner answered on October 7, 2016, Answer,

ECF No. 13, and the parties briefed the issues, Pl.'s Br., ECF

No. 15; Pl.'s Reply Br. 1-3, ECF No. 19; Br. Supp.

Commissioner's Decision ("Def.'s Br."), ECF No. 18.  On June 2,

---

[2] The administrative record includes several docket entries,
labeled ECF Nos. 14-1 through 14-9.  For the sake of simplicity,
this Court cites page numbers in the continuously paginated
record as a whole, omitting reference to particular ECF numbers.

[3] For an explanation of the Court's use of the term "hearing
officer" in lieu of the term "administrative law judge," see
Vega v. Colvin, 164 F. Supp. 3d 249, 251 n.1 (D. Mass. 2016).

2017, this Court heard oral arguments[4] and remanded the case to the hearing officer only to further consider the issue rising out of Dr. Cessna's opinion.  Minute Entry, ECF No. 24.

---

[4] In order to promote the "just, speedy, and inexpensive" resolution of social security appeals, Fed. R. Civ. P. 1, I have commenced giving them oral hearings.  I am learning that this is "a means of increasing efficiency in the handling of social security appeals without impairing the quality of justice," Mauro King v. Berryhill, No. 15-00285-WGY, 2017 WL 1753442, at *1 n.5 (N.D.N.Y. Apr. 14, 2017).  While sitting as a visiting judge in the Northern District of New York,

> armed with thorough bench memoranda, this Court heard six such appeals during the afternoon of January 31, 2017.  Three were denied directly from the bench and the remaining three . . . were taken under advisement. . . . [O]ral argument played (as it so often does) a pivotal role in the Court's analysis.  The overall efficiency in case processing is, however, evident.
>
> Court technology deserves commendation here.  I presided over these hearings while sitting in Boston (although designated a visiting judge in the Northern District of New York).  Plaintiffs' counsel and one pro se plaintiff appeared in their home courts in Albany and Syracuse.  Government counsel phoned in from the Manhattan courthouse of the Southern District of New York.  Had we had just a bit more time, I could have seen everyone via our present split video screen technology.  The savings in costs and travel times are apparent.

Id.

Here in the Western District of Texas, I have been assigned, inter alia, this case plus two other social security appeals: Wentland v. Colvin, 6:16-cv-00006-WY (W.D. Tex. June 2, 2017), and Stewart v. Colvin, 6:16-cv-00097-WY (W.D. Tex. June 2, 2017).  After careful preparation, I heard all three appeals on the afternoon of June 2, 2017, denying Wentland's appeal and remanding Stewart's and Ihde's cases for further proceedings ore tenus.  Minute Entry, Wentland, No. 6:16-cv-00006-WY, ECF No. 17; Minute Entry, Stewart, 6:16-cv-00097-WY, ECF No. 17; Minute Entry, ECF No. 24.  Only Ihde's appeal appeared to warrant a more extended discussion.  This opinion is the result.

At the urgent request of all parties, we heard these appeals over the telephone with my court reporter making a

complete record.  Oral argument by all parties was of a very
high order.  I was hesitant to agree to a telephone conference
since the public's business ought be addressed in a truly public
forum, *i.e.*, a courtroom.  <u>See</u> <u>Securities & Exch. Comm'n</u> v.
<u>Eagleeye Asset Mgmt., LLC</u>, 975 F. Supp. 2d 151, 153 n.1 (D.
Mass. 2013).  Here, however, a telephone conference on the
record made sense.  Consider: the appellants, Ihde, Stewart, and
Wentland, are all residents of the Waco area (none of them
appeared via telephone but they were, of course, welcome).
Counsel for the Social Security Administration phoned in from
Dallas and appellants' counsel argued from their offices in New
York and Philadelphia while I heard the arguments in my chambers
in Boston.

Strikingly, these data confirm the essentially national
nature of social security disability determinations and led me
to revive an idea I'd earlier conveyed to the Chair of the
United States Judicial Conference.  Letter from William G.
Young, District Judge, United States District Court for the
District of Massachusetts, to David B. Sentelle, Chief Judge,
United States Court of Appeals for the District of Columbia
(Nov. 20, 2012) (on file with author).  Why don't we create a
national docket of social security cases (along the lines of our
MDL dockets) and empower judges in courts with low caseloads as
visiting judges who could handle them and relieve the pressure
points?

After all, the Judicial Conference apparently thinks we are
overstaffed with judges in at least one court.  Report of the
Proceedings of the Judicial Conference of the United States 17
(Mar. 14, 2017), http://www.uscourts.gov/about-federal-
courts/reports-proceedings-judicial-conference-us.  Why not take
a slew of social security appeals and empower judges to work on
them?  The idea could be extended without overly complex
administrative mechanisms throughout those courts with lesser
workloads while easing delays in cases jammed up for trial.
Compare America's most productive courts.  Hon. William G. Young
& Jordan M. Singer, <u>Bench Presence: Toward a More Complete Model</u>
<u>of Federal District Court Productivity</u>, 118 Penn St. L. Rev. 55
(2013).

The benefits are significant.  Most important, these
litigants could more rapidly get their day in court, moreover,
while each appellant would be entitled to the law applicable in
his or her circuit, the careful decisions of district judges
"visiting" from various home courts would inevitably tend to
even out the undue disparities in approach to this ever more
important national statute.  <u>See</u> Jonah J. Horwitz, <u>Social</u>
<u>Insecurity: A Modest Proposal for Remedying Federal District</u>

**B.    Factual Background[5]**

Ashley Ihde was born on September 22, 1984.  Admin. R. 275.
She was twenty-nine years old when she filed her applications
for social security benefits, asserting that her disability had
begun on August 30, 2009.  See id. at 12, 275.  Ihde graduated
high school and completed training as a dental assisting
apprentice.  Id. at 280.  Her work history includes employment
as a food server, cashier, and retail sales clerk.  Id. at 29-
30, 281.  Ihde asserts five conditions place limitations on her
ability to work: anxiety, depression, paranoia, borderline
personality disorder, and bipolar disorder.  Id. at 279.

**II.  ANALYSIS**

**A.    Standard of Review**

To uphold the factual determinations of the Social Security
Commissioner, the Court must find that such determinations are
supported by substantial evidence, 42 U.S.C. § 405(g), and that

---

Court Inconsistency in Social Security Cases, 34 Pace L. Rev.
30, 37, 53-54 (identifying the existence of intra and extra-
district conflicts in the application of social security law and
the backlog of such cases in district courts nationally).
Finally, such a unitary approach would tend to reduce the
balkanization of the district courts and address Martin Luther
King's poignant warning that "injustice anywhere is a threat to
justice everywhere."  Martin Luther King, Jr., Letter from a
Birmingham Jail (1963).  It is an idea worthy of serious
discussion.

[5] As necessary, the Court incorporates further factual
background into its analysis of Ihde's claims.

no errors of law have occurred.  <u>Johnson</u> v. <u>Bowen</u>, 864 F.2d 340, 343 (5th Cir. 1988).  Substantial evidence is "less than a preponderance," <u>Hollis</u> v. <u>Bowen</u>, 837 F.2d 1378, 1383 (5th Cir. 1988), but "more than a mere scintilla . . . . [and that which] a reasonable mind might accept as adequate to support a conclusion," <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted); <u>see also</u> <u>Salinas</u> v. <u>Schweiker</u>, 662 F.2d 345, 347 (5th Cir. 1981).  To determine whether the Commissioner's factual determination is supported by substantial evidence, the Court must look to the administrative record as a whole.  <u>Greenspan</u> v. <u>Shalala</u>, 38 F.3d 232, 236 (5th Cir. 1994) (citing <u>Haywood</u> v. <u>Sullivan</u>, 888 F.2d 1463, 1466 (5th Cir. 1989)).  The Court cannot, however, "reweigh the evidence, try the issues <u>de novo</u>, or substitute [its] judgment for that of the [Commissioner]." <u>Id.</u>

For benefit determinations, "[p]rocedural perfection in administrative proceedings is not required." <u>Rollins</u> v. <u>Astrue</u>, 464 F. App'x 353, 358 (5th Cir. 2012) (quoting <u>Mays</u> v. <u>Bowen</u>, 837 F.2d 1362, 1364 (5th Cir. 1988)).  Accordingly, even if the Court finds error in the Commissioner's decision, if that error does not upset the substantial rights of the litigants, the Court may find the error harmless and decline to vacate

judgement.  <u>See</u> <u>id.</u> (quoting <u>Bowen</u>, 837 F.2d at 1364); <u>see also</u>
28 U.S.C. § 2111.

**B.    Social Security Disability Standard**

A disability is "the inability to do any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a
continuous period of not less than 12 months."  20 C.F.R.
§§ 404.1505(a), 416.905(a).  To establish whether a claimant
meets this definition, the Social Security Administration uses a
sequential five-step evaluation: 1) is the claimant engaging in
"substantial gainful activity" that demonstrates no disability;
2) does the claimant have an impairment(s) that alone or
combined is sufficiently medically severe to meet the duration
requirement; 3) does the claimant's impairment(s) satisfy the
duration requirement and equal or exceed an impairment in
appendix 1; 4) can the claimant engage in past relevant work
considering the claimant's residual functional capacity ("RFC");
and 5) do the claimant's age, education, work experience, and
RFC demonstrate that she can perform other work.  <u>Id.</u>
§§ 404.1520(a)(4), 416.920(a)(4).  If the evaluator can make a
determination about the claimant's disability status at any
given step, then he does not proceed to the next step.  <u>Id.</u>

Between steps three and four of the disability evaluation,
the evaluator assesses the claimant's RFC.  Id.  The RFC "is the
most [a claimant] can still do despite [his or her]
limitations," taking into account all of the claimant's
medically determinable impairments.  Id. §§ 404.1545(a)(1)-(2),
416.945(a)(1)-(2).

**C.    The Hearing Officer's Decision**

In this case, the hearing officer evaluated Ihde's claim
using the five-step process.  Admin. R. 14-20.  At steps one and
two, he found that Ihde was not participating in substantial
gainful activity and did have three severe impairments (obesity,
bipolar disorder, and post-traumatic stress disorder ("PTSD")).
Id. at 14.  At step three, however, the hearing officer
determined that although Ihde's impairments were severe, they
did not reach the threshold of any appendix 1 impairments.  Id.
at 14-16.  He concluded that Ihde had "the [RFC] to perform a
reduced range of medium work," id. at 16, and that while Ihde
would be unable to participate in past relevant work (step
four), id. at 19, she would be capable of performing other jobs
(step five), and was therefore not disabled for the purpose of
acquiring benefits, id. at 19-20.

**D.    Ihde's Challenges**

Ihde challenges three aspects of the Commissioner's
decision: 1) the hearing officer's failure to specify the weight

accorded to Nurse Garcia or Dr. Cessna's opinions, Pl.'s Br. 10-13, 2) the existence of other evidence in the record contradicting the hearing officer's conclusions, id. at 13-15, and 3) the hearing officer's alleged use of his lay opinion in relying on evidence not available to the state agency and state medical professionals, id. at 16-17. While Ihde's challenges are largely unsuccessful, the hearing officer's failure to explain sufficiently the weight accorded to Dr. Cessna's opinion merits remand.

### 1. Hearing Officer's Failure to Specify Weight of Opinion Evidence

Ihde first challenges the hearing officer's failure to identify the weight he assigned to opinion evidence in the record. Id. at 11. Specifically, Ihde takes issue with the hearing officer's omission of the weight, if any, that he gave to Nurse Garcia and Dr. Cessna's opinions as well as his reasoning for not adopting their perspectives regarding Ihde's limitations in the RFC evaluation. Id. at 11-12.

When the Social Security Administration reviews and evaluates opinion evidence for the purpose of determining a claimant's disability, it deals with the evidence differently depending upon the source. SSR 06-03p, 2006 WL 2329939, at *2-6

(Aug. 9, 2006).[6]  There are three types of sources:

1) "acceptable medical sources," 2) other health care providers

who are "not acceptable medical sources," and 3) "non-medical

sources."  Id. at *1-2.  Acceptable medical sources consist of

licensed physicians, psychologists, optometrists, podiatrists,

and qualified speech-language pathologists.  Id. at *1.  Not

acceptable medical sources include nurse practitioners,

physician assistants, licensed clinical social workers,

naturopaths, chiropractors, audiologists, and therapists.  Id.

at *2.  Non-medical sources include individuals working in

educational environments, social welfare agency professionals,

rehabilitation counselors, family members, neighbors, employers,

and clergy.  Id.  Not acceptable medical sources and non-medical

sources both are classified as "other sources."  Id.

    "Medical opinions are statements from physicians and

psychologists or other 'acceptable medical sources' that reflect

judgments about the nature and severity of an individual's

_____

    [6] On March 27, 2017, the Social Security Administration
effected a rescission of Social Security Rulings 06-03p, 96-2p
and 96-5p for all claims brought on or after that date.
Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p,
82 Fed. Reg. 15263-01 (Mar. 27, 2017).  Ihde, however, filed her
initial benefit applications on February 21, 2014, Admin. R. 12,
received a decision from the hearing officer on June 1, 2015,
id. at 20, and filed her complaint in federal court on February
8, 2016, Minute Entry, ECF 3.  Therefore, these rulings remain
applicable for the purposes of this case.  See Rescission of
Social Security Rulings, 82 Fed. Reg. 15263-01.

impairment(s), including symptoms, diagnosis and prognosis, what

the individual can still do despite the impairment(s), and

physical and mental restrictions." Id. Where "other sources,"

such as nurse practitioners, have provided opinion evidence,

evaluators should compare their opinion evidence against the

available medical opinion evidence. Id. at *4. Social Security

Ruling 06-03p specifies a preference for the evaluator to supply

an explanation for his evaluation of the opinion evidence from

other sources:

> Although there is a distinction between what an
> adjudicator must consider and what the adjudicator
> must explain in the disability determination or
> decision, the adjudicator generally should explain the
> weight given to opinions from these "other sources,"
> or otherwise ensure that the discussion of the
> evidence in the determination or decision allows a
> claimant or subsequent reviewer to follow the
> adjudicator's reasoning, when such opinions may have
> an effect on the outcome of the case. In addition,
> when an adjudicator determines that an opinion from
> such a sources is entitled to greater weight than a
> medical opinion from a treating source, the
> adjudicator must explain the reasons . . . if the
> determination is less than fully favorable.

Id. at *6. There is no requirement, however, that the

evaluator explain his reasoning where he accords greater weight

to the opinion evidence of an acceptable medical source than

the opinion evidence of other sources. See id. Therefore,

while there appears to be a preference for the evaluator's

explanation in such circumstances, this is not a requirement.

See id.

To determine the weight afforded to medical opinions, the evaluator considers six factors: 1) whether the source has examined the claimant; 2) whether the source has a treating relationship with the patient and the length, frequency, nature, and extent of that relationship; 3) the extent to which the source supports his findings with "relevant evidence" or explanation; 4) whether the source's opinion is consistent with the rest of the record; 5) whether the source is a specialist on the relevant medical issue; and 6) whether there are any additional factors that corroborate or counter the source's opinion.[7]  20 C.F.R. §§ 404.1527(c), 416.927(c).  Acceptable medical sources' opinions may be entitled to greater weight than other sources' opinions because the prior sources "are the most qualified healthcare professionals."  SSR 06-03p, at *5 (internal quotation marks omitted).  This preference is not

---

[7] While the content of the weight factors for medical opinions are very similar to that of other source opinions, SSR 06-03p does phrase the factors slightly differently than sections 404.1527(c) and 416.927(c) with regard to other source opinions:

> [1] How long the source has known and how frequently the source has seen the individual; [2] [h]ow consistent the opinion is with other evidence; [3] [t]he degree to which the source presents relevant evidence to support an opinion; [4] [h]ow well the source explains the opinion; [5] [w]hether the source has a specialty or area of expertise related to the individual's impairment(s); and [6] [a]ny other factors that tend to support or refute the opinion.

SSR 06-03p, at *4-5.

absolute, however, and the application of the six weight factors to the facts of a case might tilt the scale in favor of the opinion from an other source.  Id.

To assess a claimant's RFC, the Social Security Administration evaluator is required to review "all of the relevant evidence in the case record."  SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  The evaluator must "always consider and address medical source opinions" and explain the rejection of any such opinion.  Id. at *7.

### a.  Nurse Garcia's Opinion

Ihde argues that Nurse Garcia's opinion should have more weight.  Pl.'s Br. 16.  Nurse Garcia is a nurse practitioner,[8] Admin. R. 486, and thus an "other source, SSR 06-03p, at *2. For opinion evidence from other sources, the hearing officer is not required to consider every weight determining factor; however, he should examine those factors applicable to the particular circumstances of a given case.  See SSR 06-03p, at *5; see also Adkins v. Berryhill, No. 3:16-CV-000459-RFC, 2017

---

[8] Although the hearing officer incorrectly refers to Nurse Garcia as Ihde's "counselor" rather than "nurse practitioner," Admin. R. 18, the mistake is negligible because both are other sources, SSR 06-03, at *1-2, and there is no indication that either specializes in Ihde's impairments (obesity, bipolar disorder, and PTSD), Admin. R. 14.  Therefore, the hearing officer's misclassification of Nurse Garcia as a counselor has not affected Ihde's substantial rights and is harmless error. See Rollins, 464 F. App'x at 358.

WL 1185235, at *7-8 (W.D. Tex. Mar. 29, 2017) (Castaneda, M.J.) (holding hearing officer's consideration of two factors was sufficient); Mitchell v. Astrue, No. SA-11-CA-0751-XR, 2012 WL 2368508, at *9 (W.D. Tex. June 21, 2012) (Rodriguez, J.) (holding hearing officer's consideration of four of the six opinion weight factors of not acceptable medical source was sufficient). A hearing officer's decision should sufficiently discuss the weight factors to establish why he rejected opinion evidence; it cannot be "devoid of any degree of specific consideration" of the opinion evidence. See Cruse v. Commissioner of Soc. Sec., 502 F.3d 532, 541 (6th Cir. 2007). It is also permissible for the hearing officer to examine Nurse Garcia's opinion for the purpose of garnering information about the severity of Ihde's impairment and how the impairment hinders her ability to work. See Frantz v. Astrue, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 404.1513(d)); Lacroix v. Barnhart, 465 F.3d 881, 886-87 (8th Cir. 2006) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)).

Here, although the hearing officer does not explicitly state that he is weighing Nurse Garcia's opinion, he does discuss the consistency of her statements with other evidence in the record, making specific reference to Nurse Garcia's finding of "marked to extreme limitations in function" and contrasting it with other evidence. Admin. R. 18. The hearing officer

refers to Nurse Garcia's opinion evidence again when discussing how Ihde's "situational depression" is only sufficient to "establish at most moderate limitations in function." Id. The record demonstrates that the hearing officer did, at least implicitly, consider at least one of the weight factors in SSR 06-03p. Accordingly, this Court held that the hearing officer did not err in his weighing of Nurse Garcia's opinion evidence.

### b. Dr. Cessna's Opinion

Ihde argues that the hearing officer mischaracterized Dr. Cessna as a treating physician and thus accorded the doctor's opinion inappropriate weight. Pl.'s Br. 16. In his decision, the hearing officer called Dr. Cessna Ihde's "treating physician." Admin. R. 18. A treating physician is a "treating source," meaning a claimant's "acceptable medical source who provides [her], or has provided [her], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1527(a)(2).

Courts look to the "treating physicians rule" as the standard which hearing officers ought use to analyze and weigh the opinion evidence of a claimant's treating physician. Rodriguez v. Astrue, No. SA-09-CA-999-XR, 2010 WL 4007617, at *4-5 (W.D. Tex. Oct. 12, 2010) (Rodriguez, J.); Barrientoz v. Massanari, 202 F. Supp. 2d 577, 589 (W.D. Tex. 2002) (Biery, J.). This rule dictates that a treating physician's opinion

evidence be given "considerable weight in determining disability." Barrientoz, 202 F. Supp. 2d at 591; see Greenspan, 38 F.3d at 237.

Despite this deference, a hearing officer can accord a treating physician's opinion less weight where there is "good cause" for the determination, such as "statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." Greenspan, 38 F.3d at 237; see also Thibodeaux v. Astrue, 324 F. App'x 440, 443-44 (5th Cir. 2009); Barrientoz, 202 F. Supp. 2d at 591. Where there is no conflicting "reliable medical evidence from a treating or examining physician," a hearing officer can choose to reject a treating physician's opinion evidence only after a detailed discussion of the weight factors set forth by the Social Security Administration. Thibodeaux, 324 F. App'x at 444; Newton v. Apfel, 209 F.3d 448, 453 (5th Cir. 2000); Barrientoz, 202 F. Supp. 2d at 589. Generally, the hearing officer ought discuss all six factors if granting a treating physician's opinion little or no weight. Newton, 209 F.3d at 456.

Opinions of acceptable medical sources that are not treating sources are not provided with the same "considerable weight" as treating sources, Robinson v. Astrue, 271 F. App'x 394, 396 (5th Cir. 2008), but such medical opinion evidence is

still entitled to weighing and evaluation, Kneeland v. Berryhill, 850 F.3d 749, 760 (5th Cir. 2017); Pradia v. Colvin, No. 3:15-CV-00036-RFC, 2017 WL 28088, at *4 (W.D. Tex. Jan. 3, 2017) (Castaneda, M.J.); 20 C.F.R. §§ 404.1527(c), 416.927(c). A hearing officer demonstrates that he properly weighed the evidence where he gives "specific reasons," in accordance with the weight factors, for assigning an examining physician's evidence a particular weight. See Pradia, 2017 WL 28088, at *5; but see Ciccotti v. Astrue, No. SA-09-CV-969-XR, 2010 WL 3022775, at *9 (W.D. Tex. July 28, 2010) (Rodriguez, J.) ("The [hearing officer i]s not required to conduct a six-factor test to weigh the medical opinions of non-treating doctors because the doctors were not treating doctors."). There is not, however, a requirement for "detailed analysis." Pradia, 2017 WL 28088, at *5.

Here, under either the treating physician or the examining physician relationship, the hearing officer has not engaged in a sufficiently detailed or specific analysis concerning the weight to be accorded Dr. Cessna's opinion. See Thibodeaux, 324 F. App'x at 444; Pradia, 2017 WL 28088, at *5. The hearing officer states that "[w]hile the undersigned finds a majority of the work-related limitations in function reported by her current treating physician persuasive, the evidence does not support the extreme deficits in attendance and the marked

deficits in carrying out detailed tasks proposed." Admin. R.
18 (citing Dr. Cessna opinion evidence at Ex. 10F). He
explains that Ihde's admission that she was "stable for the
past two years" was sufficient evidence to disregard Dr.
Cessna's findings of marked deficits. Id. Yet there is no
additional discussion about why the hearing officer accepted a
portion of Dr. Cessna's opinion while rejecting another
portion. Id. at 16–19.

Further, the hearing officer inaccurately cites Dr.
Cessna's opinion in a discussion of Ihde's September 2014
hospital visit, to which Dr. Cessna's opinion evidence does not
pertain. Id. at 18. The hearing officer's brief discussion of
Dr. Cessna's evidence does not grapple with the weight factors
and this, coupled with his inaccurate citation of Dr. Cessna's
opinion in other portions of the decision, renders the hearing
officer's weight determination opaque at best. Therefore, the
record does not evidence that the hearing officer properly
determined or explained the weight he accorded to Dr. Cessna's
opinion or that his determinations regarding that opinion are
supported by substantial evidence. The Court accordingly
remanded on this issue.

### 2. Existence of Contradictory Evidence in Record

Ihde argues that the hearing officer improperly examined
the evidence of record because there is sufficient evidence to

contradict the finding that Ihde's medication was managing her
mental symptoms. Pl.'s Br. 13-15. To support her claim, Ihde
cites two cases: Daniels v. Barnhart, No. SA-04-CA-0261 XR
(NN), 2005 U.S. Dist. LEXIS 11516 (W.D. Tex. June 14, 2005)
(Rodriquez, J.), and Armstrong v. Sullivan, 814 F. Supp. 1364
(W.D. Tex. 1993) (Sparks, J.). Pl.'s Br. 14. In Daniels, the
court suggests in a footnote that "the [hearing officer] is
obligated to expressly resolve conflicts in the evidence and
may not merely ignore evidence which weighs against his
decision." 2005 U.S. Dist. LEXIS 11516, at *27 n.74 (citing
Loza v. Apfel, 219 F.3d 378, 393-94 (5th Cir. 2000)). The
hearing officer had stated incorrectly that State Agency
Medical Consultants agreed with another doctor's conclusion
that claimant did not have marked limitations, when a report by
the consultants actually contradicted this finding. Id. at
*24-27. In Armstrong, the court ruled the hearing officer
erred where he did not explain his reasoning regarding the
insufficiency of the claimant's time period of injury and
completely omitted discussion of contrary evidence in the
record. Armstrong, 814 F. Supp. at 1373. The court
determined, inter alia, that the hearing officer ought have
provided "specific findings regarding the supporting and
conflicting evidence, the weight to give that evidence, and the
reasons for his or her conclusions regarding the evidence."

Id. (citing DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983); Rivera v. Sullivan, 771 F. Supp. 1339, 1351, 1354, 1356 (S.D.N.Y. 1991)).

Unlike these cases, however, the hearing officer here does not omit or incorrectly cite key information -- he acknowledges that Ihde has ongoing symptoms and mental health issues, but finds these situational. Admin. R. 18. Although Ihde takes issue with the hearing officer's classification of her relapses, Pl.'s Br. 15, the Commissioner cites case law supporting the hearing officer's finding, Def.'s Br. 7. The most persuasive is McGehee v. Chater, 83 F.3d 418, 1996 WL 197435 (5th Cir. Mar. 21, 1996). In McGehee, the Fifth Circuit held that a hearing officer rightfully determined that claimant's "limited period of psychiatric treatment" stemming from financial, marital, and health issues creating a situational depression was not sufficient to establish a medically determinable mental impairment. Id. at *2-3. The hearing officer based his findings on the evaluation of a consultative psychiatrist, which the court ruled provided substantial evidence to support the hearing officer's decision despite other evidence in the record supporting the opposite finding. Id.

Here, the hearing officer notes that Ihde continued to have mental symptoms after 2011, even as recently as 2015. Admin. R. 18. The hearing officer, however, also cites evidence

indicating that Ihde's mental symptoms are the result of
"significant life stressors," such as Nurse Garcia's description
of Ihde's relapses as "situational." Id. The hearing officer
concludes that such situational relapses were insufficient to
suggest more than moderate limitations in Ihde's functioning.
Id. There is substantial evidence in the record to support this
determination; thus there is no error on this issue.

### 3. Hearing Officer's Reliance on Lay Opinion

Ihde last proffers that the hearing officer based his
decision "on his own lay opinion of the evidence" rather than on
the opinions of medical sources. Pl.'s Br. 17. Ihde emphasizes
that the hearing officer states that he based his RFC
determination for Ihde "on updated evidence that was not
available for review by the State Agency, and a different
interpretation of the evidence reviewed by the State Agency
physician." Id. at 16 (citing Admin. R. 19). Ihde asserts that
this disclosure coupled with the hearing officer's lack of
explanation for his "implicit rejection" of other sources of
opinion evidence demonstrates his use of his lay opinion. Id.
at 16-17.

Where the hearing officer considers new medical evidence,
SSR 96-6p requires that he request an updated medical opinion
from a state agency medical or psychological consultant when he
believes such evidence could change their previous findings.

SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996).  This

requirement relates to a hearing officer's assessment of step

three, however, not the determination of a claimant's RFC.  See

id. at *4 (omitting mention of requirement specified in medical

equivalence section).  Ihde cites San Miguel v. Astrue, No. SA-

10-cv-0766 XR (NN), 2012 U.S. Dist. LEXIS 16551 (W.D. Tex. Feb.

6, 2012) (Nowak, M.J.), but the case does not clearly

distinguish between the RFC assessment and the equivalent

impairment assessment, see id. at *16-19 (citing SSR 96-6p), a

distinction which the ruling does make, SSR 96-6p at *3-4.  The

other cases Ihde cites deal with general circumstances where the

hearing officer relied on his or her lay opinion.  See Lax v.

Astrue, 489 F.3d 1080, 1089 (10th Cir. 2007) (holding that

hearing officer's determination that there were "large

variations" in claimant's IQ scores was not backed by

substantial evidence where there was "no evidence in the record"

of such variation); Morales v. Apfel, 225 F.3d 310, 318 (3d Cir.

2000) (determining that hearing officer could not reject opinion

evidence of treating physician "supported by the record" in

favor of his own opinion); Wichman v. Astrue, 857 F. Supp. 2d

618, 628-30 (W.D. Tex. 2012) (ruling that hearing officer did

not use the correct legal standard in analyzing treating

physician's opinion evidence where he did not apply weight

factors).  There is not, however, evidence in the record that

the hearing officer relied on his own opinion rather than a
medical source's, nor does Ihde provide specific instances of
lay opinion reliance in her brief.  <u>See</u> Pl.'s Br. 16-17; Admin.
R. 16-19.  Accordingly, the hearing officer did not err in this
regard.

**III. CONCLUSION**

For the foregoing reasons, this Court on June 2, 2017
ALLOWED Ihde's motion for remand only on the issue of
determining the proper weight to accord Dr. Cessna's opinion.

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE